By the Court, Robertson, Ch. J.
The learned justice, before whom the issues in the action were tried, after reminding-the jury that the plaintiff had testified that he told the discount clerk of the defendants, (Selden,) where 'the maker of the note in question lived and did business, charged them that if he did so, and the discount clerk failed to make a memorandum of it on the note, that was a matter with which the plaintiff had nothing to do; the defendants, were responsible. This was clearly the law of the case; for if the plaintiff communicated the residence of the maker to the defendants, he did all that could be required of him, and if they undertook to have the notes properly presented for payment and failed to do so, they were clearly responsible.
But the counsel for the defendants insists that under the evidence, they did not enter into any contract, assume any duty, or incur any obligation to present the note in question to the maker for payment, and give notice of non-payment to the indorsers; that they only undertook to hand it to a notary for that purpose, according to their usual practice, and the custom of banks in the city of New York, and that the plaintiff only requested it to be “protested ” if not paid. The requests made on the trial, from the fifth to the eighth inclusive, and also the fourteenth, were based on that assumption. I apprehend the use of the term “protested ” cannot limit the liability of the defendants. By common usage, particularly in regard to promissory notes, in commercial dealings, it has come to include taking all the steps necessary to charge indorsers. (Ood *350 dington v. Davis, 1 Comst. 109.) So also depositing a note for collection does not imply merely the receipt of the moneys, if paid by the maker, but includes taking all such steps before mentioned. (Smedes v. Bank of Utica, 20 John. 372. S. C. 3 Cowen, 663. McKinster v. Bank of Utica, 9 Wend. 46. S. C. 11 id. 473. Allen v. Merchants' Bank, 22 id. 228, per Verplanck, senator. See also Walker v. Bank of State of New York, 5 Seld. 584; Montgomery County Bank v. Albany City Bank, 3 id. 460; Commercial Bank of Pennsylvania, v. Union Bank of New York, 1 Kern. 211.) The cases just cited also establish that the mere employment of a notary for the purpose of making a demand, does not discharge the party undertaking the collection, from the obligation of procuring a proper presentment and notice in case of non-payment. No custom can control such a positive and universal rule of law. The five requests to charge before mentioned, were therefore properly refused.
The same authorities and considerations dispose of the objection that the cause of action was not assignable, contained in the fifth of such requests to charge. The defendants undertook no such public duty as a common carrier does, since they were not bound to contract to present the note when due; they might have limited their liability, or made their contract in any way they thought proper. If they did enter into an agreement to present such note when due, they are responsible for the breach of it as such, and not for a failure to discharge a public duty; nor does the allegation in the complaint that such obligation was a duty or trust, or that the defendants were guilty of negligence, alter that aspect of it. Besides, the objection is merely one of form as to the want of proper persons as plaintiffs, which is waived by not being set up by answer or demurrer. Moreover, the assignment was a mere release of the interest of one to the other already having a right of action. Such objection was therefore properly overruled, and such request rightly refused.
The precise nature, however, of the defendants’ obliga *351 tion does not so clearly appear from the cases already cited. Of course it is not an absolute one that the note shall be demanded of the maker when due, but merely that the party undertaking the collection shall use due diligence to charge the indorsers by demand and notice; and whatever would be due diligence on the part of the plaintiff'would be due diligence on the part of the- defendants, although the converse of the proposition would not be true. For if the plaintiff or his partner knew the residence of the maker, as they testified, and they omitted to have the notes demanded there, the indorsers would be discharged; but the defendants would not be liable, if the plaintiff did not communicate the residence of the indorsers, and they used due diligence to discover such residence. And this was what the learned judge on the trial intended by instructing the jury to find a verdict for the defendants, if the man who left the notes, said he did not know where the maker lived and “the notary exercised such diligence as is required in common and ordinary business transactions, to charge the indorsers.” This view brings up the consideration whether, as matter of law, the defendants were relieved from any. duty to inquire further of either the plaintiff or George Ayrault, where the maker of the note in question lived, if either of them told the discount clerk that he did not know his residence, as insisted upon in the first request of the defendants to charge, or it was such concurring negligence on the part of the plaintiff and his brother as prevented the former from recovering, if he left the notes in question without informing the discount clerk of the defendants where such maker lived, after such clerk had said to him “ the notary must do the best he could;” or if either of the Ayraults, knowing the residence of the maker, told such clerk he did not know it; or if the plaintiff or George Ayrault (if the latter left the notes for collection) omitted to inform such clerk or the defendants of such residence. The learned judge on the trial charged the jnry, that “it should have a strong influence on their verdict and weigh a *352 great deal,” if the clerk asked that question, and was told by one of the Ayraults that he did not know. This left it open for the jury to decide, as matter of fact, whether one of the holders, having either omitted to give the required residence or denied knowing it, it was a matter of due diligence to inquire of the other. The defendants knew, or at least it was never questioned on the trial that they knew, that the notes in question belonged to the plaintiffs’ firm, and if George Ayrault, as testified to by their clerk, denied knowing and lived at Poughkeepsie as their cashier stated, there was so much more reason for inquiring of the plaintiff who lived here, where the residence of such maker was. It was therefore properly left to the jury to say whether such omission was or was not consistent with due diligence, instead of instructing them peremptorily as matter of law, that an omission or refusal by one of the holders of a note to state where the maker’s residence was, relieved the defendants of all obligation to ask the other, in the course of their inquiry. The mere omission by both might have relieved the defendants from such obligation, but no such proposition was asked to be given. Under, those put put forth, the plaintiff might have told the residence and his brother denied knowing it, and the defendants be discharged. The first, with the eleventh, twelfth and thirteenth of such requests, were properly refused.
Somewhat analogous considerations govern the last two requests (15th and 16th) preferred on behalf of the defendants, in reference to inquiries of the indorsers (Ryan & Wehman) as to the residence of the maker. It was entirely a question for the jury, whether an inquiry of the indorsers tended to inform the defendants of the residence of the makers, and was an act of proper diligence for the purpose. The mere fact that there was no evidence in the ease, that the indorsers knew such residence, is not sufficient to show that all inquiry of them was useless. A want of actual demand was shown in the case. This made out prima fade, a case of negligence. It was for the defendants to show *353 due diligence, and if any natural source of intelligence appeared in the case, they were bound to show that they applied to it in vain. It is a natural thing to suppose that an indorser knows where the maker of a note payable to him is to be found; and if it were perfectly evident that the jury had found a want of due diligence, simply from the omission to apply to such indorsers, the court would not disturb the verdict as being without evidence to support it. The last two requests were, therefore, properly refused.
The real question in this case was whether the defendants performed their contract by using, with the information they possessed, due diligence, by themselves or their agents, to present the notes in question, when due, to the makers for payment, and not whether the notary, who was merely one of such agents, had, with the information he possessed, used such diligence. It was, therefore, wholly immaterial to the plaintiffs’ rights, what communications took place between the different agents of the defendants, such as their cashier and notary, when attempting to discharge the duty of the defendants. What passed between such cashier and notary, relative to the residence of George Ayrault, was, therefore, wholly immaterial in this case. The only material question that could arise would be whether what Ayrault told such cashier was sufficient to induce a belief in the mind of an ordinarily intelligent man that "he had changed his residence; but no such question was propounded. What the cashier was led to believe was immaterial, if the information did not warrant such a belief. His statement to the notary of what he believed, whether officially and in good faith or not, was not material, and could not excuse the defendants, although it might their notary, from making inquiries. The second, third and fourth requests were, therefore, properly refused.
There was clearly enough evidence in the case to be submitted to the jury on the question of negligence; the ninth and tenth requests to charge were, therefore, properly refused.
*354 The exceptions to the admission and rejection of evidence are generally founded on the same grounds as the requests to charge, and were, as well as those which were not so, untenable.
The judgment appealed from must be affirmed, with costs.